N THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHRISTOPHER BATCH, | ) ) ) ) | Civil Action No. 2:11-cv-875 |
| Plaintiff, | ) ) ) ) | Judge Joy Flowers Conti<br>Magistrate Judge Cynthia Reed Eddy |
| v. | ) ) |  |
| CONSTABLE ROBERT GEAGAN;<br>BUTLER CITY POLICE DEPARTMENT;<br>and POLICE OFFICER RENSEL, | ) ) ) ) |  |
| Defendants. | ) |  |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Christopher Batch ("Batch" or "Plaintiff), in his Second and Supplemented Amended Complaints (ECF Nos. 57, 78), brings claims against Butler City Constable Robert Geagan ("Geagan"), several pursuant to 42 U.S.C. § 1983 and one pursuant to common law. Geagan has filed Motions to Dismiss (ECF Nos. 60, 93), to which Plaintiff has responded (ECF Nos. 64, 88, 100). The Court respectfully recommends that Geagan's Motions be granted in their entirety.

Specifically, the Court recommends that Geagan be granted qualified immunity with respect to the Fourth Amendment unreasonable seizure claim. The Court further recommends that the Motions to Dismiss all remaining claims against Geagan be granted with prejudice.

## II. REPORT

**Facts**

Batch's case has been particularly difficult to analyze because from pleading to pleading his factual allegations have changed radically. This has made responding to these claims extremely difficult for the Defendants, and problematic for the Court. On July 12, 2011, Batch, who is incarcerated at the State Correctional Institution at Somerset ("SCI-Somerset") on charges not relevant here, filed a pro se Complaint alleging violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, naming as Defendants, Geagan, Butler City Police Officer, Chad Rensel ("Rensel"), and an unidentified journalist with the Butler Eagle. (ECF No. 3). In the original Complaint, Batch alleged that Geagan and Rensel engaged in an unlawful search and seizure. Before Defendants responded to this Complaint, Batch filed an Amended Complaint omitting the unidentified journalist,[1] but adding as Defendants the Butler City Police Department, and "Butler County-City of Butler District Court of Common Pleas." (ECF No. 7). Batch's amended Statement of Claim was brief, and in all salient respects, similar to the original Complaint:

> On or about October 27, 2009; at 325 W. Jefferson Street located in Butler County in the State of Pennsylvania; Defendant Constable Robert Geagan was in the above location apartment building, serving a warrant for a Christopher Diaz and Sabrina Guthrie. In the process of Plaintiff; Christopher Batch was leaving the premisis. The same [D]efendant Constable Robert Geagan asked Plaintiff if he had exited out of apartment two (2). Plaintiff stated that he had not exited out of apartment two (2) After these events defendant: Constable Robert Geagun; unhost and pulled his service weapon, and pointed it in the direction of the Plaintiff Christopher Batch to detain Plaintiff without just cause. Defendant Robert Geagan then proceeded to search the person of Plaintiff;

---

[1] In an Order dated 9/26/2011, Batch was directed to confirm whether he intended to press his case against the journalist. He failed to respond.

2

> Christopher Batch and then put contents back on the person of the Plaintiff. Another officer, defendant Rensel, arrived on scene and the same search of the Plaintiff, Christopher Batch's person was searched again then proceeded to detain Plaintiff to be taken into custody for what was said to be identification purposes. While at the station defendant officer Rensel and unknown lieutenant executed a strip search on the person of the Plaintiff; Christopher Batch; which lead to the discovery of illegal drugs.

(Id. at pp. 3, 6-7) (spelling and grammatical errors in original). In response, Geagan filed a Motion to Dismiss (ECF No. 19) pursuant to Fed. R. Civ. 12(b)(6). The Court granted this Motion with prejudice as to the Fifth, Sixth, and Fourteenth Amendment claims, but held that Batch's Fourth Amendment claim survived: "The essence of Batch's Complaint is that Geagan pulled a gun on and searched him without cause. These allegations are sufficient to establish a Fourth Amendment excessive force claim . . . ." (ECF No. 35 at p. 6), adopted as the opinion of the District Court in its Order dated April 12, 2012. Geagan's assertion of qualified immunity was deemed premature. (ECF No. 35 at p.7 n.3).

Following the filing of a Motion to Dismiss for Failure to State a Claim (ECF No. 47) by Butler County, Batch filed three Motions to Amend his Complaint yet again. In the first, Batch asked that Butler County be dismissed as a Defendant and that he be allowed to add the City of Butler, as it was "responsible for Officer Rensel and Officer Geagan['s] actions." (ECF No. 50). In the second Motion to Amend (ECF No. 51),[2] Batch also sought to add section 1983 claims against Rensel and Geagan for malicious prosecution and abuse of process, and against the City of Butler for failure to train, and for maintaining a "practice, policy and/or custom of shielding officers from complaints of citizens for mishandling evidence, failing to perform complete protocol and to supervise its officers in ethical procedures." (Id. ¶14).

---

[2] A duplicate Motion to Amend was docketed at (ECF No. 52).

3

In a Memorandum Order (ECF No. 53) dated September 6, 2012, the Court granted Butler County's Motion to Dismiss (ECF No. 47). Citing the policy of the Court of Appeals for the Third Circuit that "leave to amend the pleadings [is to be given] freely," the Court granted Plaintiff's request to make specified substantive amendments to the Second Amended Complaint. (ECF no. 53 at p. 2). The Court's Order set the following conditions:

> The second amendment to Plaintiff's Complaint . . . must be a stand-alone document independent of any Complaint or Motion already filed. The Second Amended Complaint must name all Defendants, include causes of action identifying Plaintiff's legal theories, and set out as many facts as possible surrounding the alleged wrongdoing . . . Plaintiff is strictly cautioned that the inclusion of claims distinct from those set forth in his prior Complaint or in the Motion[s] seeking to amend that Complaint will be considered a failure to comply with this Order and will result in dismissal of the Second Amended Complaint.

(Id. at p. 4) (internal citations omitted).

On October 11, 2012, Batch filed a Second Amended Complaint. (ECF No. 57). In his statement of facts he asserted that his Fourteenth Amendment rights were violated when Geagan and Rensel, acted jointly in an "evil and reckless way" so as to engage in racial profiling. (Id. ¶5). ). In support of this allegation, Batch stated:

> On October 27, 2009 Robert Geagan & Chad Rensel was dispatched to 325 West Jefferson St. In the City of Butler. Robert Geagan was given a warrant to arrest two caucasian people. When he arrived he seen a Black male in the hall, (Plaintiff). Then without questioning the black male, Robert Geagan pulled his service weapon on the black male then asked him if he came from a certain apartment. The black male gave Robert Geagan a apartment number, and which wasn't where Robert Geagan was order[ed] too for the arrest warrant. Gun still on the black male as he was seated. Another officer came about. Officer Rensel came to the scene with the knowledge of a arrest warrant for two Caucasian and never having contact with Geagan. As soon

4

> as Rensel entered the apartment building he started questioning the Black male.
>
> Robert Geagan and Chad Rensel acted in a racial profiling state as facts state in the omnibus records.[3] Both officers knew that the warrant[s] [were for two Caucasian] people, one male one female not a black male. Also page 4 of the omnibus records . . . shows Officer Rensel never questioned the white female.

(Id. ¶¶ 5-6) (footnote added). In the Second Amended Complaint, Batch does not allege that he was subjected to a search by Geagan; his sole claim against Geagan is based on allegedly unreasonable detention prior to Rensel's arrival at the scene.

Next, Batch states that Geagan and Rensel subjected him to malicious prosecution in that they "acted malicious and/or for the purpose of defaming, harassing, intimidating and/ or racial profiling Plaintiff." (Id. ¶7). According to Batch, he was arrested without probable cause, and was "deprived of his liberty as he was incarcerated and detained on said charges; he was required to attend all hearings and . . . to report to court personnel until the case was dismissed." (Id.).[4]

---

[3] The omnibus records, to which the Court briefly referred in its Amended Report and Recommendation regarding the First Amended Complaint (ECF No. 35 at p. 2) were mentioned by Batch as evidence of racial profiling. These records were not attached to Batch's pleading, and were not available to the Court at the time the Amended Report and Recommendation was drafted. Later in the proceedings, Batch attached as an exhibit to Response to Geagan's Motion to Dismiss First Amended Complaint, (ECF No. 21-1), an Omnibus Pre-Trial Motion filed in in the Court of Common Pleas of Butler County, Pennsylvania, Case No. 2486 of 2009, in which his attorney filed an account of events transpiring on the night of Batch's interaction with Geagan. In this document, Batch alleges that as Geagan approached, Batch was leaving the apartment where the persons named in the warrants to be served by Rensel lived. The Motion does not again mention Geagan, nor does it allege any illegal action on his part.

[4] In his First Amended Complaint, Batch abandoned altogether allegations illegally Geagan searched him, focusing instead on an alleged seizure by Rensel.

Plaintiff next asserts claims against the City of Butler and its Police Department,[5] employees, and officers, alleging first that "[t]he City of Butler exhibited deliberate indifference in failing to properly train and supervise its officers in the collection, storage process of evidence due to the number of previously mishandled cases involving evidence . . . ." (Id. ¶100). Batch makes no effort to tie these allegations to events in which he was involved. He also makes unsupported allegations with respect to the City's deliberately indifferent failure to "properly train its officers in ethical procedures involving racial profiling, harassing, intimidating, racial discrimination [sic]." (Id. ¶12).

Batch also complains that his handcuffs were too tight when he was arrested,[6] and that he suffered emotional distress, humiliation, fear, frustration, intimidation, helplessness and embarrassment. (Id. ¶¶18-20). Last, in the fact section of his Second Amended Complaint, Batch contends that he was the victim of abuse of process, and was falsely imprisoned on charges that were illegally obtained and ultimately dismissed. (Id. ¶23).

Batch then articulates the four counts upon which he now relies. In Count I, he states that he suffered malicious prosecution as a result of the actions of "Robert Geagan, Chad Rensel, . . . City of Butler, Butler Police Department, Mark A. Lope and District Attorney [sic] Office of Butler City in their individual capacities . . . ." (Id. at p. 5).[7] Count II is based on failure to train

---

[5] For purposes of section 1983, a municipality and its police department are deemed to be a single entity. See Boneberger v. Plymouth Twp., 132 F.3d 20, 25, n.4 (3d Cir. 1997).

[6] This assertion is irrelevant to Geagan, since Geagan is not alleged to have handcuffed Batch.

[7] Although Mark Lope's name appears in the Second Amended Complaint, he is not named as a Defendant, nor do the allegations in the Complaint describe his role in the alleged violation of Batch's constitutional rights. The docket fails to show that Lope has been served in this action. Because Lope is not a party to this action, the Court does not construe the Second Amended Complaint as stating a civil rights or other claim against him; the same is true as to the Butler

6

and supervise leveled against the same Defendants. Count III asserts a Fourteenth Amendment Equal Protection claim against all Defendants, and Count IV is a state law claim for malicious prosecution against the same parties. (Id. at p. 6).

Following the filing of Geagan's Motion to Dismiss the Second Amended Complaint, Batch filed a "Motion to Bring Forth Fourth Amendment Claim of Illegal Search and Seizure." (ECF No. 78). He alleged that he had failed to understand that he was permitted to include the surviving claim from his original Amended Complaint in his Second Amended Complaint. (Id. ¶4). He thus requested that he be permitted to assert, in what amounted to a Third Amended Complaint, "a Fourth Amendment claim against defendants Geagan & officer Rensel for illegal search and illegal detain." (Id. at p. 2). In an Order filed January 8, 2013, the Court, in deference to Batch's pro se status, generously granted Batch's Motion, ruling that it be considered a Supplement to the Second Amended Complaint. Defendants were given an opportunity to respond, and did so by filing Supplemental Motions to Dismiss. (ECF Nos. 93, 95). Batch replied to these Motions. (ECF Nos. 88, 100).

**Standard of Review**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the non-moving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). In Phillips, the United States Court of Appeals for the Third Circuit reiterated the Rule 12(b)(6) pleading requirements explained by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 and Ashcroft v. Iqbal, 556 U.S. 662 (2009). See Phillips, 515 F.3d at 233–34.

Motions to dismiss are evaluated pursuant to a three-pronged approach. First, the Court

---

City District Attorney's Office. All of the docket filings relating to Mark Lope are, therefore, of no legal effect.

7

must identify the essential elements of the plaintiff's cause of action. Second, the Court evaluates whether the complaint sets forth factual allegations as opposed to conclusory statements; the former it accepts as true, and the latter it disregards. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, if the complaint sets forth factual allegations, the Court must determine whether they support a claim to relief that is plausible on its face. See Iqbal, 566 U.S. at 664. A claim is plausible when the plaintiff pleads facts that allow the Court reasonably to infer that the defendant is liable for the conduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). This standard does not impose a probability requirement at the pleading stage, but instead requires that the facts alleged be sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims made. See Phillips, 515 F.3d at 234.

**Discussion**

The Court now turns to the adequacy of the Supplemented Second Amended Complaint, considering each count seriatim, the miscellaneous claims buried in the fact section of the Complaint, and the reanimated Fourth Amendment claims.

Count I

Count I of the Second Amended Complaint alleges malicious prosecution. To survive a motion to dismiss a section 1983 malicious prosecution claim, a plaintiff must include in his complaint facts sufficient to support a plausible claim that: 1) the defendant initiated a criminal proceeding; 2) the proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See Estate of Smith v. Marasco, 318

F.3d 497, 521 (3d Cir. 2003). Even under the most liberal reading of his Second Amended Complaint, Batch has failed to make the required showing. The essence of his claim against Geagan is that in the course of serving a warrant on two Caucasians, he detained Batch by pointing a gun at him until Police Officer Rensel arrived.

Batch has failed adequately to allege even the first element of a malicious prosecution claim against Geagan. He does not allege that Geagan, aside from detaining him until Rensel arrived, played any role in initiating a criminal proceeding. In fact, it is not clear from the Second Amended Complaint why Batch was arrested, or with what crime he was charged. Furthermore, Batch has alleged nothing to suggest that Geagan conspired with Rensel or anyone else to have Batch arrested or charged with a crime, or that Geagan's actions were undertaken with malicious intent. The account of Batch's arrest and incarceration for purposes of establishing malicious prosecution could hardly be more spare. Batch writes:

> Robert Geagan and Rensel subjected Plaintiff to Malicious Prosecution in that:
> A) Robert Geagan and Officer Rensel acted malicious [sic] and/or for the purpose of defaming,[8] harassing, intimidating and/or racial profiling Plaintiff
> B) Plaintiff was deprived of his liberty as he was incarcerated and detained on said charges; he was required to attend all hearings and he was required to report to court personnel until the case was dismissed.

(ECF No. 57 ¶7) (footnote added). Despite Batch's having been given ample opportunity to set out adequate facts in support of his malicious prosecution claims and instruction in how to do so

---

[8] In order to state a constitutionally based defamation claim, a plaintiff must show that a state defendant defamed him, "and that the actor did so while depriving him of another constitutionally protected interest." Watson v. Borough of Darby, No. Civ. A. 9607182, 1997 WL 135701 at *4 (E.D. Pa. March 17, 1997). Nothing in the Second Amended Complaint satisfies this requirement. There are no facts whatever indicating that Geagan engaged in defamation. This claim should, therefore, be dismissed with prejudice.

9

(ECF No. 53 at p. 3), the allegations in the Second Amended Complaint fall short of the Twombly/Iqbal standard, even when his pro se status is taken into account. Accordingly, Geagan's Motion to Dismiss Count I of the Second Amended Complaint should be granted.[9]

Count II

Count II of the Second Amended Complaint, purports to state a "failure to train" and supervise claim against all Defendants including Geagan. Disposition of this Count requires minimal discussion, as Batch does not allege that Geagan had a duty to train anyone in any aspect of the law or policy, that he was a policy or final decision maker for the City of Butler, or that he was associated - even tangentially - with the City of Butler's alleged failure "to properly train and to supervise its officers to prevent the practice of racial profiling or cultural bias." (Id. ¶17). Geagan's Motion to Dismiss Count II of the Second Amended Complaint should also be granted. See Monell v. Dept. of Soc. Serv. of City of New York, 436 U.S. 658, 691-92 (1978) (local governments not vicariously liable under section 1983 for actions of their employees); Galena v. Leone, 638 F.3d 186, 197 (3d Cir. 2011) (because vicarious liability does not apply to section 1983 suit, plaintiff must plead that each government official, through his own individual actions, violated his constitutional rights).

---

[9] In his Second Amended Complaint, Batch also failed to follow the Court's directive that matters not surviving dismissal of the First Amended Complaint or not set out in his Motions to Amend be omitted from a Second Amended Complaint. Batch ignored this directive, raising a plethora of new claims. Although the Court would be justified in dismissing the Second Amended Complaint outright, again in deference to the fact that Batch is a pro se litigant, it considers the merits of the newly raised claims. Also recognizing that Batch likely lacked the legal sophistication to understand that the Fourth Amendment claim which survived Geagan's original Motion to Dismiss could be asserted in the Second Amended Complaint, the Court allowed him to file a Supplement to that Complaint. See Order dated January 8, 2013.

10

Count III

In Count III of the Second Amended Complaint, "Batch brings a [F]ourteenth [A]mendment Equal Protection claim (racial profiling) against Geagan." (ECF No. 57 at p. 6). Batch has not, until now, articulated a Fourteenth Amendment claim based on racial profiling; he did not seek to do so in the requests to amend his Complaint.[10] To overcome a motion to dismiss an equal protection claim in the context of racial profiling, Batch must have alleged facts sufficient to support a plausible claim that Geagan, in detaining him, was motivated by a discriminatory purpose and that the detention had a discriminatory effect. See Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002). In order to satisfy the first requirement, Plaintiff must show that he belongs to a protected class, and that he was treated differently from a similarly situated person outside the class. Bradley v. United States 299 F.3d 197, 206 (3d Cir. 2002). By his own admission, Batch was the only person in his situation when he was detained by Geagan. Therefore, there is no comparator. Furthermore, Batch was "strictly cautioned" that if he raised a claim for the first time in his Second Amended Complaint, it would be dismissed.

Count IV

Similarly, Count IV of Batch's Second Amended Complaint sets out, for the first time, a state law claim for malicious prosecution against Geagan and others, which should be dismissed for failure to comply with the Court's Order permitting him to file a Second Amended Complaint. Furthermore, except for the need to show deprivation of a liberty interest, the elements of a malicious prosecution claim under Pennsylvania law are the same as those under section 1983, Kelly v. Gen. Teamsters, Chauffeurs, and Helpers, Local Union 249, 544 A.2d 940

---

[10] Although Batch used the term "racial profiling," in prior pleadings, he did so only in the context of a Fourth Amendment claim for malicious prosecution, a claim dismissed when the District Court adopted the Court's Amended Report and Recommendation. See Order dated April 12, 2012.

11

(Pa. 1988), and his state law malicious prosecution claim is, like the federal claim, deficient. Count IV of the Second Amended Complaint should be dismissed.

Miscellaneous Claims Asserted in the Fact Section of the Second Amended Complaint[11]

The false imprisonment claim is, in effect, part and parcel of the Fourth Amendment unreasonable seizure claim because Batch contends that Geagan unreasonably detained him. A section 1983 false imprisonment claim based on an arrest or detention made without probable cause "is grounded in the Fourth Amendment's guarantee against unreasonable seizures." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). False arrest is a "species" of false imprisonment and they can be considered one tort. See Wallace, 549 U.S. at 388–89. See also, Garcia v. Cnty. of Bucks, 155 F. Supp.2d 259 (E.D. Pa. 2001) (stating that Fourth Amendment has been used to prohibit and or invalidate false arrests).

Batch did not assert abuse of process claims in his prior filings. Reference to this alleged wrong is, however, included in the fact section of the Second Amended Complaint where Batch states that he "spent numerous days in Butler County Jail on charges that were illegally obtain [sic] by the officers of this case." (ECF No. 57 ¶¶ 22-23). Not only is this claim new, as Defendants point out, it is barred by the controlling statute of limitations.

In Wilson v. Garcia, 471 U.S. 261 (1985), the United States Supreme Court held that in actions brought pursuant to section 1983, courts should apply the state limitations period applicable to personal injury actions. The statute of limitations for abuse of process claims, as with other section 1983 claims sounding in tort, is two years. See Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585, (3d Cir. 1985) (citing Pa. Cons. Stat. Ann. ¶5524). The statute of

---

[11] Even if a pro se plaintiff's claims are not set out in the clearest fashion, the Court is obligated to discern all the possible claims that the Plaintiff may be alleging. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520–21(1972).

12

limitations on a section 1983 abuse of process claim begins to run "as soon as the right to institute and maintain a suit arises." Langman v. Keystone Nat'l Bank & Trust Co., 672 F. Supp.2d 691, 701 (E.D. Pa 2009) (quoting Sutton v. West Chester Area Sch. Dist., No. 03-cv-306, 2004 WL 999144 at *8 (E.D. Pa. May 5, 2004)). An abuse of process claim would, therefore, have arisen no later than the time of his arrest, which was in October 2009. Batch did not file his Second Amended Complaint until October 2012. His abuse of process claim is time barred. The same is true with respect to Batch's bare-bones statement purporting to support his newly raised claim for infliction of emotional distress.[12]

The Supplemental Fourth Amendment Claims and the Availability of Qualified Immunity

In the Court's Order dated January 8, 2013, Batch was granted what amounted to the opportunity to file a Third Amended Complaint – this time to include section 1983 claims alleging illegal seizure under the Fourth Amendment against Geagan. Batch does not allege in his Second Amended Complaint or the Supplement thereto that Geagan searched him.[13] Consequently, the Court must determine whether the facts alleged by Batch are sufficient to support a plausible claim Fourth Amendment against Geagan for unreasonable seizure.[14] The Court finds that they are not, and even if they were, Geagan is entitled to qualified immunity.

---

[12] In addition, in order to state a viable claim for infliction of emotional distress, a plaintiff must allege physical harm resulting from the defendant's outrageous conduct. See Swisher v. Pitz, 868 A.2d 1228 (Pa. Super. 2005). Batch has not done so.

[13] As a result, the case law cited by Geagan discussing *searches* conducted in common areas of locked or unlocked apartment buildings and Batch's expectations of privacy is inapposite. (ECF No. 96 at pp. 3-4).

[14] In his reply to Rensel and the City of Butler's response to the supplemental Fourth Amendment claims (ECF No. 101, Batch changes legal horses once again, contending, as he has not since his First Amended Complaint, that Geagan conducted an illegal search of Batch's person. Batch failed to raise this claim in his Second Amended Complaint, and did not ask to address it in

Under the Fourth Amendment, evaluation of the legality of a seizure has two parts: determining whether there has, in fact, been a seizure, and, if so, whether the seizure was reasonable. United States v. Smith, 575 F.3d 308, 312 (3d Cir. 2009). "'[A] person is 'seized' . . . when, by means of physical force or a show of authority, his freedom of movement is restrained.' Put another way, no seizure has occurred if 'a reasonable person would feel free to disregard the police and go about his business or ultimately whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter . . . .'" United States v. Wilson, 413 F.3d 382, 386 (3d Cir. 2005) (citing United States v. Mendenhall, 446 U.S. 544, 553 (1980) (internal citations omitted)). See also Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011) ("[A] Fourth Amendment seizure [occurs] . . . where there is a governmental termination of freedom of movement intentionally applied") (citation omitted). In his Second Amended and Supplemented Complaint, Batch has adequately alleged a seizure.

"For a seizure to be reasonable under the Fourth Amendment, "[t]he scope of the detention must be carefully tailored to its underlying justification." Bailey v. United States., ___U.S. ___, ___, 133 S. Ct. 1031, 1038 (2013) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). This depends upon all of the circumstances surrounding the seizure. See New Jersey v. T.L.O., 469 U.S. 325, 337-342 (1985). "The permissibility of a particular law enforcement practice is judged by 'balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.'" Perez v. Borough of Berwick, No. 4:07-cv-2291, 2013 WL 1750997 at *5 (3d Cir. April 23, 2013) (quoting United States v. Villamonte-Marquez, 462 U.S. 579, 588 (1983)). "Methods employed by law enforcement that may seem extreme in hindsight are not per se constitutional violations, even if they caused

---

supplementing his Second Amended Complaint. The time for amendment has passed, and, in any event, a reply addressing arguments raised by other Defendants is not the vehicle for doing so.

discomfort to a plaintiff." Wargo v. Mun. of Monroeville, Pa, 646 F.Supp.2d 777, 784–5 (W.D.Pa. 2009) (citations omitted).

Detention may, in certain circumstances, be based on something less than probable cause. Reasonable suspicion may be sufficient. The United States Supreme Court has distinguished between the legal standards of probable cause and reasonable suspicion. That Court's decision in Terry v. Ohio, 392 U.S. 1, 20 (1968) instructs that a police officer has the right to stop and detain an individual where the officer's actions are reasonable. The officer must adduce "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Id. at 21. "This must be more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for a police officer to make such a stop. However, that level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence and less demanding than the level for probable cause." 8A Fed. Proc., L. Ed. § 22:226 (2013). "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime, but officers are not required to ignore relevant characteristics of the location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Id. (citing Illinois v. Wardlow, 528 U.S. 119 (2000). "The purpose of permitting a temporary detention without probable cause of a warrant is to protect [law enforcement] officers and the public." United States v. Fautz, 812 F. Supp.2d 570, 663 (D. N.J. 2011) (quoting Smith, 3 F.3d at 1097).

Whether particular methods used to effect a seizure violate the Fourth Amendment depends on the circumstances surrounding the decision. For example, there is no per se rule that pointing a weapon at or handcuffing an individual constitutes a violation of a person's Fourth

15

Amendment rights. See Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995) (stating that there use of handcuffs and guns must be justified by circumstances) (collecting cases). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving . . . ." Graham v. Conner, 490 U.S. 386, 397 (1989). "In considering whether the seizure was 'reasonable,' the Court must judge 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' This reasonableness inquiry is an objective one." Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002) (internal citations omitted). Thus, the question is whether Geagan's conduct was "objectively reasonable" given the situation confronting him, "regardless of his underlying intent or motivation." See Graham, 409 U.S. at 397. (citing Scott v. United States, 436 U.S. 128, 137–39 (1978)).[15]

In his Supplemented Second Amended Complaint, Batch sets out an account of events that undermines his assertion that Geagan, in detaining him, violated his Fourth Amendment rights. Batch states at the time of his detention he was in an apartment hallway, near a unit where Geagan arrived alone to serve two warrants, the validity of which is uncontested (ECF No. 57 ¶5). When Geagan encountered Batch in the hallway, Batch, after being asked, denied that he had come from the apartment where those to be served were believed to be located. Geagan allegedly pulled a gun on Batch. At about the same time, a white woman exited the apartment. Geagan kept the gun on Batch, who was then seated in the hallway, until Rensel arrived. Rensel knew that Geagan was in the apartment building to serve arrest warrants, and began to attempt to

---

[15] Batch, in his Second Amendment Complaint, as Supplemented, does not allege excessive force, but focuses rather on his ethnicity as the primary factor demonstrating that his seizure was unreasonable. The Court has already explained that the facts articulated by Batch do not support his equal protection claim or an inference of racial profiling.

ascertain Batch's identity. (Id.). Prior to Rensel's arrival, Batch's proximity to the prospective arrestees' location could well have caused Geagan, or a reasonable officer on the scene, knowing what he did at the time, to detain Batch based on the possibility that Batch, whether intentionally or unintentionally, would interfere with the arrest – intentionally, by threatening or making physical contact with Geagan, or innocently by obstructing Geagan's access to the apartment. Presumably, he could have shouted a warning to those inside the apartment, which could have put both Batch and Geagan in danger. See e.g., Willowby v. City of Philadelphia, 946 F. Supp. 369, 373 (E.D. Pa. 1996) (finding that officers' decision, with guns drawn, to order bystanders into prone position on porch of one house while warrant was being served by other officers next door, reflected officers' concern that gunfire could erupt, and was reasonable until other officers had secured the house where the warrant was being served.). The likelihood that Geagan acted to protect himself and others by detaining Batch is bolstered by other information in the record.[16]

---

[16] Significantly, in his Response in Opposition to Geagan's Motion to Dismiss First Amended Complaint and to the Motion to Dismiss to be Treated as a Motion for Summary Judgment filed by Rensel and the City of Butler, (ECF No. 88), Batch recasts the facts surrounding his detention, as he has done multiple times in his various filings. In his response, Batch admits that he was "in a known drugged [sic] area. (Id. ¶¶5, 61). Furthermore, to substantiate his wrongful detention claim, Batch, as the Court has already noted, attached an exhibit to his Response, - an Omnibus Pre-Trial Motion filed on his behalf in the case captioned Commonwealth v. Batch, C.A. No. 2486 of 2009 in the Criminal Law Division of the Court of Common Pleas of Butler County, Pennsylvania. The authenticity of this Motion is not disputed. The Court, therefore, considers this pleading in the context of Geagan's Motion to Dismiss without the need to convert Geagan's Motion to Dismiss to one for Summary Judgment. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd, 181 F.3d 410, 426 (3d Cir. 1999) (instructing that court considering 12(b)(6) motion may consider facts alleged in the pleadings, documents attached thereto as exhibits, and matters of judicial notice).
    The Motion, submitted to the state court by counsel for Batch, states that "Constable Robert Geagan approached 3225 W. Jefferson Street, Apt. #2, Butler, PA to serve a warrant [on two individuals]." (ECF No 21-1 ¶3). "Constable *Geagan approached said apartment as the Defendant, Christopher Batch, exited.*" (Id. ¶4) (emphasis added). "Patrolman Rensel arrived at the scene, immediately detained the Defendant and demanded identification." (Id. ¶7). "The Defendant was taken into custody and transported to the Butler City Police Station for providing False I.D. to Law Enforcement." (Id. ¶ 14). "While at the station several bundles of herion [sic],

Based on the foregoing discussion, the Court finds that Batch has failed to allege facts adequate to state a plausible claim that Geagan acted unreasonably in seizing him. Consequently, Geagan's Motion to Dismiss should be granted on the ground that Batch's Supplemented Second Amended Complaint fails to state a claim for violation of the Fourth Amendment. In the interest of complete analysis, however, the Court notes that even if it were to find that Batch adequately alleged transgression of the Fourth Amendment, and that the right violated was clearly established at the time of Batch's detention, Geagan would, nonetheless, be entitled to qualified immunity.

"Qualified immunity is not simply a defense to liability. Rather, it is intended to completely shield an officer from having to stand trial. Accordingly, the immunity issue should be considered at the earliest possible stage of the proceedings." Slusar v. Harff, No.2:11-cv-1311, 2013 WL 1703861 at * (W.D. Pa. April 19, 2013) (citing Giles v. Kearney, 572 F.3d 318, 325-26 (3d Cir. 2002)). Even in situations where there is a violation of clearly established constitutional right of which a defendant should have been aware, qualified immunity may still be available. "A right is clearly established for purposes of qualified immunity when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008) (citing Williams v. Bitner, 455 F. 3d 186, 191 (3d Cir. 2006), in turn quoting Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotations omitted). "[A] defendant is [,though,] protected from liability if he or she acts on the basis of a reasonable mistake of fact of law." Pearson v. Callahan, 552 U.S. 223, 231 (2009). As the Supreme Court in Pearson explained, "[q]ualified immunity balances two important interests

---

several pieces of crack cocaine, $227.00 in cash, a two way radio and two cell phones were seized from [Batch.]" (Id. ¶15). This document says absolutely nothing about Geagan's role in Batch's detention, does not allege that Geagan conducted a search, and does not, therefore, have direct relevance to Geagan's alleged involvement in a Fourth Amendment violation.

– the need to hold public officials accountable when they exercise power irresponsible and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. (citing Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005), in turn quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

When the Court looks at the information provided by Batch in his Amended Supplemented Complaint, and the document attached to his Response to Geagan and Rensel's Motions to Dismiss (ECF No. 88), it has no trouble concluding that Geagan's seizure of Batch did not violate Batch's Fourth Amendment rights. Even if the Court were to construe the law so as to implicate Geagan in a Fourth Amendment violation, Geagan falls squarely within the parameters of qualified immunity. Batch is, therefore, not entitled to recover civil damages against Geagan in his individual capacity.[17]

### III. CONCLUSION

For the reasons set out above, it is respectfully recommended that Geagan's Motions to Dismiss the Second Amended Complaint as Supplemented (ECF Nos. 60, 93) be granted in their entirety with prejudice.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, any objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service of this document. Any response to objections must be filed within fourteen (14) days from the date of service of the objections.

---

[17] Suing Geagan in his official capacity is no different than naming the City of Butler multiple times in each count. A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr., 327 F.3d 572, 581 (3d. Cir. 2002). Geagan's Motion to Dismiss should, therefore, be granted him as to all claims made against him in his official capacity.

19

Failure to file timely objections will waive the right to appeal. <u>Brightwell v. Lehman,</u> 637 F.3d 187, 193 n.7 (3d Cir. 2011).

May 10, 2013

Respectfully submitted,

*Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc: Counsel of Record

    Christopher Batch
    JY-7749
    S.C.I. Somerset
    1600 Walters Mill Road
    Somerset, PA 15510